**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------×

MARY LOUISE PERLMAN,

        *Plaintiff,*

   *v.*

ALFA DEVELOPMENT
MANAGEMENT LLC,
MICHAEL NAMER,
MATTHEW NAMER, and
JACOB NAMER,

        *Defendants.*

------------------------------------------------×

        **COMPLAINT**

        **1:22-cv-7898**

        **JURY REQUESTED**

Plaintiff Mary Louise Perlman, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants Alfa Development Management LLC ("Alfa"), Michael Namer ("Michael Namer"), Matthew Namer ("Matthew Namer"), and Jacob Namer ("Jacob Namer") as follows:

## PRELIMINARY STATEMENT

1.     This case is about a failure to pay wages owed under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).

2.     This case is also about gender discrimination in violation the New York State Human Rights Law and the New York City Human Rights Law.

3.     In the alternative, in the event the Court determines Plaintiff not to be an employee, Plaintiff seeks relief as a freelancer. Plaintiff contracted for work, completed work, and Defendants refused to compensate Plaintiff in violation of the Freelance Isn't Free Act, New York City Local Law 140 of 2016 ("FIFA").

## JURISDICTION

4.     Pursuant to 28 U.S.C. 1331, jurisdiction is proper because the case arises under a

1

federal statute.

5.      Pursuant to 28 U.S.C. 1332, jurisdiction is proper because there is complete diversity of the parties.

6.      Pursuant to 28 U.S.C. 1367, this Court has the authority to hear Plaintiff's State and city law claims because they arise out of the same case and controversy in which the Court has original jurisdiction over the other claims.

## ADMINISTRATIVE PREREQUISITE

7.      Plaintiff has filed with the Equal Employment Opportunity Commission, and is currently awaiting a Right to Sue Letter and plans to file a Title VII claim thereafter.

## PARTIES

8.      Plaintiff is a resident of the State of Florida.

9.      Defendant Alfa Development Management LLC was and is incorporated under the laws of the State of New York with a principal place of business at 15 West 18th Street, 8th Floor, New York, New York, 10011.

10.     Upon information and belief, Defendant Michael Namer was and is a resident of New York, New York.

11.     Upon information and belief, Defendant Matthew Namer was and is a resident of New York, New York.

12.     Upon information and belief, Defendant Jacob Namer was and is a resident of New York, New York.

## JURY DEMAND

13.     Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

14.     Perlman began working for Alfa in 2009 as a Sales Director before taking maternity

2

leave.

15.     Perlman rejoined Alfa in 2010 as a Consultant before being promoted to Vice President of Development & Marketing in 2015.

16.     As Vice President, Perlman had a salary of $150,000/year as well as a non-discretionary bonus structure.  This compensation was less than the compensation of other similarly situated male employees.

17.     Perlman was required to report to the Alfa office for full-time employment and was given a company email, phone number, and business card and other employment related perks.

18.     Defendants treated Perlman as an employee because they had complete control over her schedule, work assignments, and working conditions.

<u>GENDER DISCRIMINATION</u>

19.     Alfa is controlled by a small knit group of men, Michael Namer, Matthew Namer, and Jacob Namer (the "Namer Defendants").

20.     Alfa's principals are all male, and Perlman was the only woman to be given any managerial role.

21.     Perlman suffered through countless awkward, uncomfortable, and disturbing conversations with the Namer Defendants about women, gender, and other topics that were offensive and not appropriate for the workplace.

22.     In one instance, while Michael Namer was discussing that 'the Namer name would live on' he used the opportunity to describe his sons' genitalia in the office while Perlman was present.

23.     During a business meeting, Perlman was pregnant with her second child, and Michael Namer took the opportunity to comment that 'women are crazy when they are pregnant,' and would frequently make disparaging statements about Perlman and women in the workplace.

3

24.     Michael Namer also was keen to make offensive jokes, one recurring joke was 'a man comes home from work and his wife says "I just saved $5,000", when the husband asks "how?", the wife responds "this mink coat was $10,000, but 50% off!"'.

25.     Michael Namer hired a young female assistant in 2018, and she suffered extreme emotional distress under his supervision, which she confided in Perlman.

26.     Despite being hired for a receptionist position, the woman was objectified and only hired so Michael Namer could parade a beautiful young assistant to meetings.

27.     Perlman told Michael Namer that the young assistant's experience and description of alleged abuses were a serious problem.

28.     Women, including Plaintiff, are objectified by the Namer Defendants and treated less well than similarly situated male employees.

29.     Prior to Perlman's termination, two men had been terminated, and were offered severance packages, unpaid vacation, and COBRA; Perlman was not even paid all the wages owed to her.

30.     Throughout the entirety of her employment, Perlman was subject to constant offensive and demeaning comments and remarks about women which constituted a severe and pervasive work environment hostile to her gender.

31.     Furthermore, she was treated less favorably, in terms of compensation, than male employees, who were given bonuses when they were terminated; Perlman was not even paid the full amount of wages owed to her.

32.     After Perlman's termination, based on information and belief, Perlman's workload was assumed by less qualified male employees of Defendants.

33.     Matthew Namer and Jacob Namer were frequently working with Perlman during this time and witnessed the hostile work environment she experienced.

4

<u>FAILURE TO PAY WAGES AND BREACH OF CONTRACT</u>

34.     Perlman exceled at her job.  She worked as a loyal and successful employee for a decade.

35.     On February 23, 2016, Perlman left a signed contract with Michael Namer detailing her salary and bonus compensation structure for all asset developments she works on.

36.     In early March 2016, Michael Namer agreed to the contract without modification.

37.     During the course of her employment from 2016 on, Perlman would periodically send in invoices detailing the compensation owed based on her completed work and Alfa's completed transactions.

38.     During the course of 2016 through 2020, Jacob Namer had frequently discussed Perlman's contract, submitted to Michael Namer in 2016, including for tax purposes.

39.     This contract was used for tax audits at Alfa.

40.     In 2019, Perlman submitted an invoice of $327,695.04, titled "ADM - 200E21 Commission #2."

41.     That invoice was paid to Perlman on January 15, 2020.

42.     Perlman performed in the same capacity in 2020 as she did in 2019 when she earned her a promotion to Executive Vice President, but no increase in salary.

43.     Despite issuing regular invoices for payment throughout 2020, some of Perlman's invoices were not paid, totaling $101,544.49.  (Hereinafter "2020 compensation").

44.     Perlman submitted an updated invoice for the 2020 compensation in March of 2021.

45.     Grace Dweck, of Alfa, initiated a wire payment for a portion of the invoice for the 2020 compensation, but Matthew Namer intervened to stop the payment.

46.     On April 12, 2021, Jacob Namer, upon information and belief at the request of Matthew Namer, told Perlman that Alfa no longer accepted the contract as valid and would not

pay her the compensation owed.

47.     Jacob Namer ceased contact with Perlman following this.

48.     Perlman reached out to Michael Namer, who explained to her that Matthew Namer and Jacob Namer were frustrated with their own compensation.

49.     Michael Namer assured Perlman that her earned compensation would be paid but asked Perlman to give them time to 'calm down.'

50.     On April 14, 2021, Matthew Namer indicated that Alfa would not honor the contract and would not pay the 2020 compensation.

51.     In April 2021, Defendants stopped paying Perlman entirely.

52.     In fact, Defendants did not pay Perlman her base salary from April 2021 through October 2021, despite the fact that Perlman continued working.

53.     Perlman called Michael Namer on or about April 14, 2021, and he again gave assurances of payment for the 2020 compensation, but also told her to 'give it time.'

54.     Matthew Namer did not respond, and Perlman followed up two weeks later, on June 5, 2021, stating that the 2020 compensation was still unpaid, and that they should discuss the matter 'sooner than later.'

55.     The unpaid 2020 compensation totaled $101,544.49.

56.     Perlman's monthly salary was $12,500, and it was not paid for the months of April 2021 through October 2021.

57.     To date, neither amount has not been paid.

58.     Matthew Namer further stated that the $327,695.04 paid in 2019 was an "accident that no one remembers," but he did not comment on any other compensation paid since 2016.

59.     Michael Namer agreed to speak directly to Perlman about the contract and unpaid invoices, but did not offer any substantive dialogue on the issue.

60.    In July 2021, Perlman was upset to hear from colleague Glenn Davis that Michael Namer is disparaging Perlman by saying she was "fired."

61.    Perlman was not told she was fired, and continued to work during this time, but three (3) months later, on October 25, 2021, was notified by Grace Dweck that she was no longer working with Defendant Alfa.

62.    All during this time, Perlman continued working for Defendant Alfa.

63.    Perlman again sent Dweck an invoice for the unpaid 2020 compensation on October 26, 2021 and Dweck said she "is working on it."

64.    From late October through November 2021, Perlman tried emailing and calling Michael Namer, but he never acknowledged or responded to her communications.

65.    Michael Namer continued to ignore Perlman until he sent her a message on December 21, 2021, asking her to call him on an urgent matter.

66.    Perlman asked if Michael Namer intends to pay commission invoice, but Michael Namer did not answer.

67.    Perlman still has not been paid her earned comp and salary.

68.    Due to the discrimination, defamation, retaliation, and failure to pay wages owed, Plaintiff has suffered, and continues to suffer, emotional distress which, at times, has been extreme.

## CAUSES OF ACTION

## FIRST CLAIM

### Retaliation Under the Fair Labor Standards Act 29 U.S.C. § 215

69.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70.     Under the Fair Labor Standards Act, it is illegal for an employer to retaliate against an employee when they complain about not being paid wages owed.

71.     Plaintiff properly and consistently complained to her supervisor about not being paid wages.

72.     Defendants harassed and retaliated against Plaintiff when she complained about not being paid wages by frequently and consistently defaming and harassing Plaintiff and, ultimately, terminating her.

73.     Defendants violated Plaintiff's right, under the FLSA, to be free from retaliation for raising her right to be paid.

74.     Plaintiff is entitled to front pay, back pay, compensatory damages, and, because Defendants' actions were willful and malicious, she is entitled to punitive damages and any other relief the court deems proper.

## SECOND CLAIM

### Failure to Pay Wages in Violation of New York Labor Law Article 6

75.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

76.     Plaintiff was owed wages from work completed throughout 2020 and 2021.

77.     Defendant Alfa did not pay Plaintiff her wages.

78.     Defendant Alfa is subject to liability through Article 6 of the NYLL by illegally

8

withholding Plaintiff's wages.

79.     Plaintiff is entitled to back pay, compensatory damages, liquidated damages, and, because Defendant's actions were willful and malicious, she is entitled to punitive damages and any other relief the court deems proper.

## THIRD CLAIM

### Breach of Contract

80.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

81.     Defendant Alfa and Plaintiff had a valid contract for employment which detailed a compensation and benefit structure.

82.     Defendant Alfa and Plaintiff had honored, adhered to, and performed that contract throughout the duration of 2016 through 2020.

83.     In 2021, Defendant Alfa claimed to no longer need to follow the terms of the contract and abruptly withheld Plaintiff's owed compensation.

84.     In April 2021, Defendant Alfa stopped paying Plaintiff her salary even though she continued to work for many months

85.     Plaintiff seeks full payment owed to her under the contract, including the $101,544.49 from 2020, seven (7) months of her base salary, and any other compensation unknown and yet to be determined, including liquidated damages

## FOURTH CLAIM

### Unjust Enrichment

86.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

87.     Defendants were required to pay Plaintiff for the work she completed.

88.     Defendants did not pay Plaintiff for her full wages earned in 2020.

89.     Defendants did not pay Plaintiff her salary for seven (7) months in 2021.

90.     Defendants unjustly enriched themselves by withholding this payment.

91.     Plaintiff suffered by being underpaid for her services rendered.

92.     This underpayment was willful and malicious and to allow Defendants to retain the unjust enrichment would be against equity and good conscience.

## FIFTH CLAIM

### Quantum Meruit

93.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

94.     Plaintiff worked for Defendants from April 2021 through October 2021 and provided that benefit of her services.

95.     The benefit provided by Plaintiff was reasonable and Defendants relied on her work performance to successfully manage Defendant Alfa.

96.     Plaintiff received no compensation whatsoever for her work completed.

97.     Defendants are obligated to pay as much as Plaintiff deserved – at least the fair market value of her services rendered.

98.     Plaintiff expected to be paid for the value of the benefit she conferred onto Defendants.

99.     Plaintiff is entitled to the reasonable payment of the value of the benefit conferred upon Defendants.

## SIXTH CLAIM

### Tortious Interference of Contract by Michael Namer, Jacob Namer, and Matthew Namer

100.    Plaintiff hereby realleges and incorporates each and every allegation contained

in paragraphs 1 through 68 with the same force as though separately alleged herein.

101.    Plaintiff had a valid contract between herself and Defendant Alfa to pay wages owed for work done.

102.    Plaintiff completed the work and earned the wages.

103.    Defendants Michael Namer, Jacob Namer, and Matthew Namer, however, interfered with that contract, and failed to release those wages to Plaintiff.

104.    Defendants Michael Namer, Jacob Namer, and Matthew Namer claimed no contract existed even though Plaintiff had extensive discussions on the issue with Michael Namer.

105.    Defendant Alfa honored the contract in 2020 by paying Plaintiff her 2019 wages based on the contract.

106.    Defendants Michael Namer, Jacob Namer, and Matthew Namer illegally claim that was 'a mistake no one remembers happening' and denied Plaintiff her payments.

107.    Upon information and belief, Defendants Michael Namer, Jacob Namer, and Matthew Namer destroyed any copies of the contract in an effort to conceal their wrongdoing.

108.    Plaintiff is owed her wages and any damages, including compensatory and punitive damages, for the tortious interference by Michael Namer, Jacob Namer, and Matthew Namer.

## **SEVENTH CLAIM**

### **Failure to Pay Wages and/or Benefits in Violation of New York Labor Law §198(c)**

109.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

110.    Under the New York Labor Law §198(c), "any employer who is party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or

fund for the benefit of employees and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section on hundred ninety-eight-a of this article.  Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor."

111.    Defendants did not pay Plaintiff her owed wages or fringe benefits within thirty (30) days of them being owed.

112.    Defendants did not pay Plaintiff for work completed during the months of April 2021 through October 2021.

113.    Plaintiff is entitled to at least minimum wage but should have been paid the time equivalent of her salary which was $12,500/month.

114.    Defendants' president, secretary, treasurer, or officers exercising corresponding functions are guilty of a misdemeanor.

115.    Plaintiff seeks full remedy to the extent available under this section, including payment of wages, liquidated damages, statutory interest, civil penalties, and, as well, any punishments upon any Defendant available.

## EIGHTH CLAIM

### Hostile Work Environment in Violation of the NYSHRL and the NYCHRL against Defendants in their individual capacities

116.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

117.    The New York State Human Rights Law and the New York City Human Rights Law ensure that all employees are free from a work environment hostile to one's gender or sex.

12

118.    Plaintiff suffered through a work environment that was hostile to her gender/sex as a woman.

119.    Defendants' senior employees made comments that perpetuated a severe and hostile work environment that discriminated against women.

120.    Plaintiff is a woman who had to endure Defendants' hostile work environment.

121.    Because Plaintiff was subject to a hostile work environment, and was later fired and told she would not be paid, she had an adverse employment action occur and is entitled to front pay, back pay, compensatory damages, and, because Defendants' actions were willful and malicious, she is entitled to punitive damages and any other relief the court deems proper.

## NINTH CLAIM

### Gender Discrimination in violation of the NYCHRL against Defendants in their individual capacities

122.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

123.    The New York City Human Rights Law makes gender/sex discrimination illegal in the work place.

124.    While NYSHRL imbues liability onto only employers, such as corporate entities, the NYCHRL goes beyond and imbues liability onto managing level employees.

125.    The Namer Defendants are senior employees covered under individual liability under the NYCHRL.

126.    The Namer Defendants violated the NYCHRL when they perpetuated or permitted a work environment hostile to women.

127.    Defendants were aware that women were treated differently than men at Alfa.

128.    Michael Namer actively made disparaging and outrageously offensive

13

comments about women.

129.    Matthew Namer treated women, especially Plaintiff, as less than because they were women.

130.    Jacob Namer was aware of the hostile work environment yet took no steps to correct the issue.

131.    Accordingly, all three, and Defendant Alfa, are subject to liability as individuals for perpetuating or permitting a severe and pervasive work environment hostile to Plaintiff's gender.

132.    Because Plaintiff was subject to a hostile work environment, and was later fired and told she would not be paid, she had an adverse employment action occur and is entitled to front pay, back pay, compensatory damages, and, because Defendants' actions were willful and malicious, she is entitled to punitive damages and any other relief the court deems proper.

## **TENTH CLAIM**

### **Failure to Pay Freelancer in Violation of Freelance Isn't Free Act**

133.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

134.    Plaintiff, as an alternative pleading to the NYSHRL and NYCHRL Claims, is a freelancer within the meaning of the Freelance Isn't Free Act.  New York City Local Law 140 of 2016.

135.    Plaintiff and Defendants entered into a contract to complete work, and the contract specifically identified compensation for the work.

136.    Plaintiff completed the work, and Defendants did not pay Plaintiff for the work completed.

137.    Local Law 140 states "Except as otherwise provided by law, the contracted

14

compensation shall be paid to the freelance worker either: 1. On or before the date such compensation is due under the terms of the contract; […] [and] Once a freelance worker has commenced performance of the services under the contract, the hiring party shall not require as a condition of timely payment that the freelance worker accept less compensation than the amount of the contracted compensation." §20-929.

138.    Local Law 140 also prevents retaliation for raising rights under this law; Plaintiff demanded to be paid and she was retaliated against.  §20-930.

139.    Defendants never paid Plaintiff for her work performed.

140.    Local Law 140 has a variety of remedies and damages calculations for individual breaches of the law.  §20-933(b).

141.    Plaintiff has suffered extensive damages, costs, attorneys fees, because of Defendants' violation of Local Law 140.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

D. For the fourth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

E. For the fifth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

F. For the sixth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

G. For the seventh cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

H.  For the eighth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

I.  For the ninth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

J.  For the tenth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements and

K.  For such other and further relief as the Court deems just and proper.


Dated: New York, NY
September 15, 2022

THE HARMAN FIRM, LLP

By: Walker G. Harman, Jr.
Walker G. Harman, Jr.
1270 Sixth Ave., Suite 756
New York, NY 10020
(646) 248-2288
wharman@theharmanfirm.com
*Attorney for Plaintiff*

17